MISSISSIPPI STATE HIGHWAY COMMISSION v. SMITH.

(Division B. Oct. 27, 1947. Suggestion of Error Overruled Nov. 24, 1947.)

[32 So. (2d) 268. No. 36567.]

Greek L. Rice, Attorney General, by John Kuykendall, Jr., Assistant Attorney General, for appellant.

490

O. H. Barnett, Jr., of Carthage, for appellee.

**Alexander, J.,** delivered the opinion of the court.

The appellant instituted eminent domain proceedings against a tract containing 2.5 acres to be used for state highway purposes. The judgment appealed from is that of the circuit court whereby there was an award of $2,825.

We proceed at once to the heart of the matter, which is a contention that the instructions for the defendant landowner authorized the jury to take into account improper bases for their appraisement.

The instructions as a whole properly set out the accepted bases of diminished value, or damages, as the value of the tract as a whole before and after the taking. Mississippi State Highway Commission v. Hillman, 189 Miss. 850, 198 So. 565, and authorities cited therein. The following instruction for the defendant must be taken into account in adjudging whether the jury were led astray by the testimony:

"The court instructs the jury for the defendants that it is your duty to return a verdict for the defendants in in such sum as will fully compensate them for the land taken, and also for such damages, if any, as may result as a consequence of the taking."

The defendant set his damages at $6,000. The basis of his computation was the alleged market value of 392 acres of land as $20,000 prior to the expropriation and $14,000 afterwards. Upon the issue of his ownership of the 392 acres, the following testimony was adduced from the defendant:

"Q. . . . how many acres do you have on the west side of this road? A. Well I reckon I have got 7 or 8 acres in there. . . .

"Q. How many acres of land do you have on the east side of the new road? A. There is 380 acres over there of mine and my son's. . . .

"Q. About how much of it is in your name? A. Well I am paying taxes on all but 100 my boy owns, or half of it.

"Q. Isn't it true that your son M. T. owns about 160 acres? A. Well I explained that this morning. They don't own anything now, that has all been settled, but it has not been remarked. . . .

"Q. Isn't it true that you just own about 160 acres according to the record? A. Yes.

"Q. The truth is, according to the record, you don't have over 60 or 70 acres there? A. They were up there for the purpose. They were going to help me educate the boys and I was not going to let them come to blame for it.

"Q. But in placing your $6000.00 estimate you are placing that damage to a tract of 392 acres? A. Well of course I don't use the south end of the land at all because I have not been down there all the time and my boys is separate from that. Everything is separate from the home place."

M. T. Smith, son of the defendant, testified that he, too, had a suit with appellant, and upon the question of ownership his testimony is as follows:

"Q. This 400 acres, really isn't a part of that in your name? A. It is to be mine when he dies and leaves it.

"Q. Don't you have a deed to it on record? A. Well the deed is recorded but I don't get possession as long as he lives. It would not make any difference whether it is 10 acres or 50 acres. I understand it is a matter of separation, damages because the highway crosses the land and cut it off like that.

"Q. Really your father don't have but 64 acres in his own name? A. He controls it as long as he lives."

It will be seen, therefore, that the assertion of ownership by the defendant is to be interpreted in the light of this testimony. Moreover, there were other elements of damage testified to by the defendant. These included the inconvenience of crossing the road to tend to his cattle, and the expense of building barns and other improvements on the east side of the highway to avoid such inconvenience. He valued the expropriated 2.5 acres at $1,000 per acre, because "It is worth $1000 an acre to split my place open." The highway left seven or eight acres on the west side where are located his home, barns, and outhouses, the remainder being on the east side, and chiefly pasture. The following questions were asked of and answered by the defendant:

"Q. You think they ought to pay you $1,000 an acre for the land that is in that right of way? A. Yes, sir.

"Q. That would be $2500 for the actual value of the 2½ acres of land, then that will leave $3500 that you think they ought to pay you. A. No, I didn't count that land from six to seven thousand ($6000 to $7000) damage. I counted that on getting the buildings across there.

"Q. Well I just wanted to get a fair understanding as to how you arrived at that $6000. I believe you say now $2500 to pay you for the 2½ acres of land? A. Well if I was to get what I want to split my Place open, that is what I would take and that is what I would ask, but I had nothing to say about it. . . .

"Q. I just want you to tell the jury how you arrive at the sum of $6000? A. Because it will take that at the very least, to put my barns and things across there, across that road.

"Q. In other words if you go over there and build new barns it would cost you that much? A. Or to move them over there so they would serve me as well as they do.

"Q. You mean by that, $6000 then would be for replacing the buildings? A. Well of course I am damaged either way, driving my cattle across the road.

"Q. But you can't put any actual value on that can you? A. No.

"Q. So you tell the jury that most of that $6000 would be expense of replacing or relocating the buildings? A. Yes, sir. . . .

"Q. How much of that $6000 do you say it would take to compensate you for inconvenience? A. I said rebuilding the buildings."

Objection to the foregoing testimony was overruled.

Witness G. W. Daugherty for the defendant testified that the value of the 2.5 tract was $125 or $50 per acre. He placed the entire damage at $4,000 on the assumption that the defendant owned 392 acres. Factors in his

assessment included "ill convenience," which he rationalized as follows:

"Q. Well how many dollars and cents do you think would actually compensate him for that? A. Well it would be owing to how long he is going to live. I figure he would make a trip of about 300 or 350 yards three times a day backwards and forwards estimating a little better than a mile a day for the old fellow.

"Q. Now Mr. Smith is about 70 years old? A. Yes, right around that.

"Q. Well say give him ten more years— A. Well I figure he would walk a mile and a half a day for 365 days. Now you can figure it out.

"Q. How much do you think he ought to be paid for that? A. I think he ought to have ten cents a mile, that is what we pay.

"Q. Well that would be, 10c a day $36.50 a year? A. About 15 cents a day.

"Q. Well 365 days would be something like $50 a year? Ten years would be $500.00? A. Well that would be considered in making the estimate for damages. I would think he would take in all his travels he would have to perform between his residence and his farm, that would be my way of looking at it. . . .

"Q. Now you are placing that kind of an estimate on the assumption that he is the legal owner of 392 acres of land? A. Yes, sir.

"Q. Then if he just owned 160 or 166 acres how much damage do you think would be done him? A. Well it would not make a great deal of difference in the damage. That would be done for the ill convenience. It would not be the amount of land that he has, it would be the ill convenience to him. To get his convenience he would have to move his residence and his barn, so I say it would cost him considerably more than $4000, that would be my judgment to put him back."

Other witnesses fixed the value of the 2.5 acre tract at from $25 to $50 per acre, and the total damage at from

$900 to $6,000. Some lump-sum estimates included inconvenience and replacement costs and some were without itemization.

We are of the opinion that the learned trial judge was in error in admitting the factors of personal inconvenience and the building of new improvements in addition to estimates of the over-all depreciation in market value in which such elements would be integrated. The test is an objective or external one and not purely subjective. The inconvenience to be considered is not that which is peculiar to one who by reason of age, disinclination or preference may react, through sentiment or prejudice, adversly to the readjustment of his boundaries. The test is the extent to which those, whose present or prospective interest will create a market value, will take these factors into account.

The quoted instruction authorized the jury to add these elements to the loss in market value. This circumstance is to be taken into account with the failure of the defendant to furnish, by an accurate disclosure of the number of acres actually owned by him and here affected, a multiplier which, operating upon an average value per acre would lead to a product representing either the prior market value or the extent of damage. Otherwise expressed, if the defendant in fact legally owned in his name only 100 acres with an average damage of $28.25 per acre, the award would represent a total loss. Of course, this result would follow if he owned 28.25 acres each of which was damaged $100.

The witnesses based their appraisements upon an assumption which this record does not justify.

Reversed and remanded.